IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

ASPEN AMERICAN INSURANCE
COMPANY,

                        Plaintiff,

        vs.

JEB MORROW, MARCUS LYON,
SHERRIE LYON,

                        Defendants.

Case No. 3:22-cv-00013-JMK

**ORDER REGARDING MOTIONS
FOR DEFAULT JUDGMENT**

        Plaintiff, Aspen American Insurance Company ("Aspen"), and Cross-Claimants, Marcus Lyon and Sherrie Lyon (the "Lyons" and, together with Aspen for the purposes this order, "Plaintiffs"), move for entry of default judgment against Defendant Jeb Morrow ("Defendant") at Dockets 16 and 18. Defendant has not appeared in this case or responded to Plaintiffs' motions. For the following reasons, Aspen's motion is DENIED without prejudice, and the Lyons' motion is GRANTED.

## I.    BACKGROUND

        On or about June 25, 2021, Julia Breeze, LLC, an Alaska limited liability company solely owned by the Lyons, sold a vessel, the JULIA BREEZE, to Defendant.[1]

---

[1] Docket 6 at 3, ¶¶ 18–19.

Defendant entered into a promissory note for $116,000 at a seven percent (7%) annual interest rate in favor of the Lyons.[2]  Secured by a ship mortgage, the promissory note required Defendant to make a first payment of $10,000 by August 15, 2021, followed by at least $25,000 in payments by December 31 of each year from 2021 through 2024, and a balloon payment for the remaining balance by the end of 2025.[3]  Defendant made several payments on the promissory note in 2021, totaling $27,593.12, with the most recent payment made on October 31, 2021.[4]

The ship mortgage agreement required Defendant to, among other things, obtain and comply at all times with an insurance policy that covered the vessel.[5]  Around the time Defendant purchased the JULIA BREEZE from the Lyons, Defendant renewed a contract of marine insurance (the "Insurance Policy") drafted by Sea-Mountain Insurance and underwritten by Aspen.[6]  The Insurance Policy included a "lay-up warranty" that required the vessel to be "laid-up" (*i.e.*, temporarily taken out of use) from October 1, 2021, through May 1, 2022, subject to a limited exception for service and fueling activities at the port of lay-up.[7]

On or about November 3, 2021, Defendant and a small crew took the JULIA BREEZE on a commercial fishing trip that departed from Petersburg, Alaska.[8]  On or about November 10, 2021, the JULIA BREEZE sank in open water off Cape Ommaney, Alaska,

---

[2] *Id.* at 3, ¶ 20.
[3] Docket 6-1 at 2.
[4] Docket 6 at 3, ¶ 21; Docket 20 at 2, ¶ 6.
[5] Docket 6-2 at 4–5.
[6] Docket 1 at 2–3, ¶¶ 7, 16.
[7] Docket 1-1 at 1.
[8] Docket 1 at 3, ¶ 10; Docket 17-4 at 2.

after which point Defendant submitted a Notice of Loss to Underwriters.[9]  On December 22, 2021, Aspen notified Defendant that his insurance claims may not be covered due to his alleged breach of the Insurance Policy's lay-up warranty since the vessel was engaged in commercial fishing operations between October 1, 2021, and May 1, 2022.[10]  Defendant has not made any payments to the Lyons since the JULIA BREEZE sank.[11]

Following these events, Aspen filed a Complaint for Declaratory Relief as to Insurance Policy Coverage against Defendant and the Lyons (as additional assureds), seeking a declaratory judgment decreeing that there is no coverage under the Insurance Policy.[12]  After filing its complaint, however, Aspen experienced issues serving the complaint on Defendant.[13]  Specifically, Aspen's attempt in February 2022 to serve the complaint via certified mail at Defendant's last-known address in Petersburg failed when the complaint was returned as "unclaimed."[14]  Aspen's counsel reported reaching Defendant via telephone on multiple occasions in March and May 2022 and receiving indications that Defendant was willing to waive service.[15]  However, Defendant did not complete and return a waiver-of-service form.[16]  Aspen then sought, and received from this Court, an extension of time to serve Defendant.[17]

---

[9] Docket 1 at 3, ¶¶ 11, 16.
[10] Docket 1 at 3–4, ¶ 17.
[11] Docket 6 at 3, ¶ 23.
[12] Docket 1 at 5.
[13] Docket 4-1.
[14] Id. at 2, ¶ 2.
[15] Id. at 2, ¶¶ 3–4.
[16] Id.
[17] Docket 4; Docket 5 (text entry only).

Aspen Am. Ins. Co. v. Morrow, et al.                                          Case No. 3:22-cv-00013-JMK
Order Regarding Motions for Default Judgment                                                      Page 3

Case 3:22-cv-00013-JMK   Document 23   Filed 11/30/22   Page 3 of 26

The Lyons answered Aspen's complaint on July 20, 2022, admitting all of Aspen's allegations and asserting a cross-claim against Defendant for breach of the promissory note and ship mortgage.[18] The Lyons seek the total amount of principal and interest remaining on the promissory note ($98,797.22), daily interest of $17.42, and attorney's fees and costs totaling $5,734.28.[19] After hiring a process server, Plaintiffs served their pleadings and summons on Defendant on July 21, 2022.[20]

Defendant has failed to answer or otherwise participate in this action.[21] Plaintiffs moved for entry of default on August 26 and September 16, 2022, and the Clerk of Court entered default on September 19, 2022.[22] Plaintiffs moved for entry of default judgment against Defendant on September 21 and October 14, 2022.[23]

## II. LEGAL STANDARD

Rule 55 of the Federal Rules of Civil Procedure governs default judgments. This rule first requires the Clerk of Court to enter default when a party "has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise . . . ."[24] Once the Clerk of Court enters default, a party seeking affirmative relief may apply to the Court to enter default judgment.[25] The Court has discretion when deciding a motion for entry of default judgment.[26] Although courts generally take as true well-pleaded factual allegations

---

[18] Docket 6.
[19] Docket 19 at 2.
[20] Docket 8; Docket 9.
[21] *See generally* Docket in Case No. 3:22-cv-00013-JMK.
[22] Docket 10; Docket 12; Docket 14; Docket 15.
[23] Docket 16; Docket 18.
[24] Fed. R. Civ. P. 55(a).
[25] Fed. R. Civ. P. 55(b)(2).
[26] *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (citations omitted).

regarding liability after entry of default, courts may decline to enter default judgment if a party's claim lacks merit.[27] Courts need not take as true allegations as to the amount of a party's damages, conclusions of law, or any facts not well pleaded.[28] In determining damages, courts have discretion to consider "competent evidence and other papers submitted with a default judgment . . . ."[29]

Additionally, the Ninth Circuit has identified seven factors that courts should consider when exercising their discretion as to the entry of default judgment: (1) the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.[30] "In applying this discretionary standard, default judgments more often are granted than denied."[31]

---

[27] *Id.*; *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

[28] *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (per curiam) (citation and internal quotations omitted) ("[U]pon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true"); *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)) (observing that a "defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.").

[29] *Mesa Underwriters Specialty Ins. Co. v. Paradise Skate, Inc.*, No. 15CV01253YGRJSC, 2016 WL 9045622, at *3 (N.D. Cal. Apr. 11, 2016) (citations omitted), *report and recommendation adopted as modified*, No. 15-CV-01253-YGR, 2016 WL 9180434 (N.D. Cal. May 2, 2016).

[30] *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

[31] *PepsiCo, Inc. v. Triunfo-Mex, Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999).

## III.  DISCUSSION

### A.  Procedural Requirements

The procedural requirements of the applicable federal and local rules are satisfied.  Defendant failed to enter an appearance, plead, or otherwise defend himself despite being served and receiving notice as to the claims brought against him.[32]  Plaintiffs provided proof of service of the complaint and cross-claim and notice to each other of their motions for entry of default.[33]  Finally, the Clerk of Court entered default against Defendant.[34]

The parties subsequently applied to the Court for default judgments, offering supporting declarations and evidence pursuant to L. Civ. R. 55.1(b)(2) in the form of:  (1) a declaration from Aspen's counsel describing the Insurance Policy, attempts to serve Defendant, and Defendant's failure to appear in this case and respond to the complaint; (2) the Insurance Policy, the copy of which provided appears to be unexecuted; (3) a report from the U.S. Coast Guard describing the vessel's sinking; (4) a press release from the U.S. Coast Guard regarding the same; (5) a U.S. Coast Guard witness statement attributed to Defendant; (6) a preliminary damage/loss report from Norcoast Marine Surveyors, Inc., describing the vessel's sinking and an interview with Defendant; (7) invoices for legal services from the Lyons' counsel; (8) an affidavit from the Lyons' counsel describing attempts to serve Defendant and Defendant's failure to appear in this case and respond to

---

[32] Fed. R. Civ. P. 55(a); Docket 4; Docket 8; Docket 9.
[33] D. Alaska Loc. Civ. R. 55.1(a); Docket 8; Docket 9; Docket 10; Docket 12.
[34] Fed. R. Civ. P. 55(a); Docket 14; Docket 15.

the complaint; (9) a declaration from Sherrie Lyon describing the sale of the vessel, the promissory note, the ship mortgage, and Defendant's payments on the note and outstanding balance; (10) the promissory note, signed by Defendant; and (11) the ship mortgage agreement, signed by Defendant.[35]   Taken together, these submissions constitute declarations and evidence sufficient to establish Plaintiffs' right to relief in accordance with the federal and local rules.

## B.   Substantive Considerations

After taking the allegations in Aspen's complaint and the Lyons' cross-claim as true, and considering the evidence submitted with their motions for default judgment, the Court considers each of the *Eitel* factors to determine whether entry of default judgment is warranted.[36]

### 1.   The possibility of prejudice to Plaintiffs

In general, prejudice exists if default judgment provides a plaintiff its only "recourse for recovery" and if its attempt to recover via a judicial proceeding otherwise would be "fruitless."[37]   Defendant has not appeared in this action, and so, in the absence of default judgment, it would be difficult, if not impossible, for Aspen to secure a declaration that Defendant breached the Insurance Policy and that Aspen does not bear liability for any losses that would have been covered by the policy.   Without the benefit of default

---

[35] Docket 17; Docket 20; Docket 21.

[36] *Eitel*, 782 F.2d at 1471–72.

[37] *Nolan v. Calello*, No. 2:21-CV-00981-AB-RAO, 2021 WL 4621945, at *3 (C.D. Cal. July 8, 2021) (quoting *Phillip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 499 (C.D. Cal. 2003)); *Alaska Carpenters Health & Welfare Tr. Fund v. Hickel Constr. & Eng'g, Inc.*, No. 3:20-CV-00047-JMK, 2021 WL 6774908, at *2 (D. Alaska Mar. 23, 2021).

judgment, Aspen could be called upon to cover losses resulting from the JULIA BREEZE's sinking. Even if Aspen would prevail in the face of such a claim, it would be forced to incur costs to do so and likely would end up back in court facing a similar situation as it faces here.

Likewise, the Lyons have no other recourse to seek the funds Defendant owes them pursuant to the promissory note. With the vessel now lost in its entirety due to Defendant's breach of the ship mortgage agreement, and there being no indication Defendant will pay the Lyons the sums he agreed to pay, the Lyons have no alternative means to recoup the losses they are suffering and will suffer as a result of Defendant's breach. Without entry of default judgment, Defendant could escape liability.

Plaintiffs would face significant prejudice without default judgment given Defendant's failure to defend the claims made against him. This factor weighs in favor of entering default judgment.

### 2. The merits of Plaintiffs' substantive claims

Courts oftentimes consider the merits of a plaintiff's substantive claim and the sufficiency of the complaint as the most important *Eitel* factors.[38] In evaluating the merits, courts conduct a substantive assessment of a plaintiff's claims.[39] For the purposes of this analysis, the Court takes as true Plaintiffs' well-pleaded factual allegations regarding liability.[40]

---

[38] *Fed. Nat'l Mortg. Ass'n v. George*, No. EDCV 14-01679-VAP, 2015 WL 4127958, at *3 (C.D. Cal. July 7, 2015) (citing *Mnatsakanyan v. Goldsmith & Hull APC*, No. CV 12-4358 MMM PLAX, 2013 WL 10155707, at *10 (C.D. Cal. May 14, 2013)).

[39] *See generally id.*

[40] *Aldabe*, 616 F.2d at 1092.

### a.    Aspen's claim

The Court's analysis of Aspen's insurance-coverage claim begins with a determination of whether state or federal law governs.[41]  In resolving this question, district courts apply state law unless an established federal rule addresses the issues raised or there is a need for uniformity in maritime practice.[42]  Although some courts have found that there is a judicially established federal rule requiring all warranties in marine insurance policies to be strictly enforced, the Ninth Circuit has "neither announced a federal rule nor disclaimed such a rule."[43]  Thus, the Court will look to Alaska contract law when interpretating the Insurance Policy's lay-up warranty.[44]  Under Alaska law, plain or unambiguous language will be given its ordinary meaning and effect, and the need to resort to rules of construction arises only when an ambiguity exists.[45]  "[W]here a clause in an

---

[41]  *Wilburn Boat Co. v. Fireman's Fund Ins. Co.*, 348 U.S. 310, 313–14 (1955); *Kiernan v. Zurich Cos.*, 150 F.3d 1120, 1121 (9th Cir. 1998).

[42]  *Kiernan*, 150 F.3d at 1121.

[43]  *Guam Indus. Servs., Inc. v. Zurich Am. Ins. Co.*, 787 F.3d 1001, 1004 n.1 (9th Cir. 2015); *see also Atl. Specialty Ins. Co. v. Thomassen*, No. 1:15-CV-00009-SLG, 2016 WL 4649804, at *3 (D. Alaska Sept. 6, 2016) (citing *Guam Indus. Servs.*, 787 F.2d at 1004 n.1) (applying Alaska law to the interpretation and enforcement of a lay-up warranty); *Ins. Co. of N. Am. v. San Juan Excursions, Inc.*, No. C05-2017Z, 2006 WL 2635635, at *8 (W.D. Wash. Sept. 12, 2006) ("There is no agreement among courts that a breach of a lay-up warranty will void coverage regardless of whether the loss was related to the breach.  Thus, there is no established federal admiralty rule requiring strict compliance with lay-up warranties.").  The Eleventh Circuit is one circuit that has articulated such a rule.  *Lexington Ins. Co. v. Cooke's Seafood*, 835 F.2d 1364, 1366 (11th Cir. 1988) ("[A]dmiralty law requires the strict construction of express warranties in marine insurance contracts; breach of the express warranty by the insured releases the insurance company from liability even if compliance with the warranty would not have avoided the loss.").  While acknowledging *Lexington*, Ninth Circuit district courts have found the existence of a federal rule requiring strict enforcement of some, but not all, express warranties.  *See Albany Ins. Co. v. Jones*, No. A95–330, 1996 WL 904756, at *4 (D. Alaska Dec. 17, 1996) (citing *Lexington Ins. Co.*, 835 F.2d at 1366) (acknowledging that "[a]dmiralty law requires strict construction of express warranties in marine insurance contracts . . ."); *Port Lynch, Inc. v. New England Int'l Assurety of Am., Inc.*, 754 F. Supp. 816, 823 (W.D. Wash. 1991) (finding "that there is a federal admiralty rule concerning the strict construction of navigation and trading warranties in marine insurance contracts.").

[44]  *Albany Ins. Co.*, 1996 WL 904756, at *3 ("Marine insurance policies are construed under the general rules of contract law.").

[45]  *Id.* (citing *Puritan Life Ins. Co. v. Guess*, 598 P.2d 900, 904 (Alaska 1979)).

insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, we accept the interpretation that most favors the insured."[46]

In addition to demonstrating the substantive merits of its claim, a party seeking a declaratory judgment must satisfy the requirements of the Declaratory Judgment Act, 28 U.S.C. § 2201.[47] To prevail under the Declaratory Judgment Act, a party must allege an "actual controversy" regarding a matter within federal subject-matter jurisdiction.[48] An "actual controversy" is "definite and concrete, touching the legal relations of parties having adverse legal interests."[49] The declaratory judgment sought must provide "specific relief through a decree of a conclusive character."[50] Although the controversy must not be "of a hypothetical or abstract character," federal courts have recognized the "well-established availability of the [Declaratory Judgment] Act for defensive use against anticipated claims."[51] Accordingly, courts may award declaratory relief in actions between insurers and assureds to determine their respective rights and

---

[46] *Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011) (quoting *C.P. ex rel. M.L. v. Allstate Ins. Co.*, 996 P.2d 1216, 1222 (Alaska 2000)).

[47] *See Snodgrass v. Provident Life & Accident Ins. Co.*, 147 F.3d 1163, 1167 (9th Cir. 1998) (citations omitted) (describing district courts' exercise of discretionary jurisdiction in Declaratory Judgment Act actions where "an insurance company seeks a declaration that it has no duty to defend a third party in an underlying dispute.").

[48] 28 U.S.C. § 2201(a); *see also Schilling v. Rogers*, 363 U.S. 666, 677 (1960) (noting that the availability of relief pursuant to the Declaratory Judgment Act "presupposes the existence of a judicially remediable right."); *Republic of Marshall Islands v. United States*, 865 F.3d 1187, 1199 n.10 (9th Cir. 2017) (citations omitted); *Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220, 1222 (9th Cir. 1998) (citation omitted).

[49] *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240–41 (1937) (citations omitted).

[50] *Id.* at 241.

[51] *Id.* at 240; *City of Reno v. Netflix, Inc.*, No. 21-16560, 2022 WL 15579803, at *4 (9th Cir. 2022) (citing *Peterson v. Highland Music, Inc.*, 140 F.3d 1313, 1322 (9th Cir. 1998), *as amended on denial of reh'g and reh'g en banc*); *see also Shell Gulf of Mexico Inc. v. Ctr. for Biological Diversity, Inc.*, 771 F.3d 632, 636 (9th Cir. 2014) (citing *Collin Cnty. v. Homeowners Ass'n for Values Essential to Neighborhoods*, 915 F.2d 167, 171 (5th Cir. 1990)) (explaining that, in evaluating a "request for declaratory relief, courts examine both the persons who can assert rights under that law and those who have obligations under it.").

obligations under an insurance policy.[52] The decision to issue a declaratory judgment falls squarely within the district court's discretion.[53]

To establish a meritorious claim, therefore, Aspen must demonstrate that Defendant entered into a marine insurance contract and violated its terms of conditions, ultimately nullifying the policy's coverage for any losses suffered in connection with the sinking. Aspen also must present a case of "actual controversy" within the Court's jurisdiction.

In its complaint, Aspen alleges the existence of the Insurance Policy by claiming Defendant "renewed a contract of marine insurance affording him hull and machinery (Hull) and protection and indemnity (P&I) coverage for the F/V JULIA BREEZE."[54] Aspen provided the Court what it contends are the terms and conditions of the Insurance Policy, which it alleges contain a lay-up warranty requiring the vessel to be laid up between October 1, 2021, and May 1, 2022, subject to a limited exception for service and fueling.[55] As relevant here, the terms and conditions of the Insurance Policy include the following:

> In consideration of the premium hereinafter stated, the various companies name [*sic*] herein, severally but not jointly, do hereby insure the assured named herein, for the amounts and proportions, set opposite their respective names. All subject to the terms and condition of the forms and endorsement [*sic*] attached herein:

---

[52] *See, e.g., United States v. Transp. Indem. Co.*, 544 F.2d 393, 395 (9th Cir. 1976).

[53] *Pub. Affs. Assocs. v. Rickover*, 369 U.S. 111, 112 (1962) (citations omitted) (observing that the Declaratory Judgment Act "gave the federal courts competence to make a declaration of rights; it did not impose a duty to do so.").

[54] Docket 1 at 2, ¶ 7.

[55] Docket 1-1.

. . . .

Lay-up Warranty

Warranted the insured vessel shall be laid-up during the period from 10/1, [*sic*] to 5/1, but with permission to move within the port of lay-up for service and fueling.[56]

The Insurance Policy's "Protection and Indemnity Clauses" form further subjects the insurer's liability "to the warranties, terms and conditions herein mentioned."[57] Aspen alleges that Defendant breached the lay-up warranty when he took the vessel on a commercial fishing trip away from its home port in November 2021.[58] Because Defendant was in breach of the Insurance Policy during the time the vessel sank on or about November 10, 2021, Aspen alleges the Insurance Policy does not cover any losses suffered in relation to the sinking pursuant to "General Maritime Law and Alaska law."[59]

The allegations in Aspen's complaint, which the Court deems to be true, establish a meritorious claim for relief. The Insurance Policy, while ambiguous in some respects, is not ambiguous as to the lay-up warranty or the impact of a breach thereof.[60] As excerpted above, the policy's coverage is "subject to" the lay-up warranty, which Defendant indisputably breached when he took the vessel out of its home port on a commercial fishing trip during the lay-up period.[61] Because the vessel's sinking occurred during this breach, Defendant's violation of the lay-up warranty nullifies the policy's

---

[56] *Id.* at 1.
[57] *Id.* at 9.
[58] Docket 1 at 4, ¶ 21.
[59] *Id.* at 4, ¶ 22.
[60] Docket 1-1 at 1.
[61] *Id.*; Docket 1 at 3, ¶¶ 10–15.

coverage for the resulting losses. As a result, the Court finds that Aspen has pleaded the existence of the Insurance Policy, Defendant's breach, and a loss of coverage resulting from the breach.[62] The Insurance Policy's provisions that might salvage some of the policy's coverage, such as the "held-covered" clause, are inapplicable because Defendant failed to cure the breach by the time the loss occurred.[63]

Similarly, the Declaratory Judgment Act's requirements are met. A dispute between an insurer and its assured over an insurance policy's coverage constitutes an "actual controversy" under the Declaratory Judgment Act.[64] Aspen, an insurer, has identified a dispute over the extent to which the Insurance Policy would require it to provide coverage for the loss of its assured's vessel. Although it appears that neither Defendant nor any other party has filed suit against Aspen, Defendant has submitted a Notice of Loss to Underwriters regarding the vessel's sinking, a step that is part of the process for seeking insurance coverage following a loss.[65] Even if Defendant had not taken that step, the Supreme Court has opined that the "actual controversy" requirement of the Declaratory Judgment Act does not require a party to "break or terminate" a contract before seeking a declaratory judgment in federal court; instead, an "actual controversy" exists if "the facts alleged, under all the circumstances, show that there is a substantial controversy,

---

[62] *Atl. Specialty Ins. Co. v. Thomassen*, 2016 WL 4649804, at *6 (applying Alaska contract law to find that a breach of a lay-up warranty would occur if a vessel "left a dock in [its port of lay-up] for the purpose of heading out to sea . . .").

[63] *See, e.g.*, Docket 1-1 at 12 (containing a held-coverage clause requiring the assured to provide notice of a breach of warranty to the underwriters within 72 hours of the breach).

[64] *Zurich Am. Ins. Co. v. Philpot*, No. 08CV1588 BEN (NLS), 2009 WL 10671921, at *4 (S.D. Cal. Sept. 8, 2009) (citing *Dizol*, 133 F.2d at 1222 n.2; *Am. States Ins. Co. v. Kearns*, 15 F.3d 142, 144 (9th Cir. 1994)).

[65] Docket 1 at 3, ¶ 16.

between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."[66]

Aspen's complaint, and the Lyons' cross-claim against Defendant, have established a "substantial controversy" because: (1) Aspen seeks to withhold payment under Defendant's insurance policy after Defendant's submission of a notice of loss, and (2) the Lyons seek from Defendant payments that Defendant could, in turn, seek to recover through an insurance policy payout.[67] The requested declaratory judgment also would be "definite and concrete," producing specific, legal certainty to parties who have "adverse legal interests" concerning liability for vessel's sinking.[68] Following entry of default judgment, neither Defendant, the Lyons, nor any other party would be able to compel Aspen to cover the losses suffered from the vessel's sinking. Additionally, the Court has independent subject-matter jurisdiction because the matter involves a marine insurance policy covering a vessel in navigable waterways, giving rise to admiralty jurisdiction, and the parties are diverse with an amount in controversy that exceeds $75,000.[69]

---

[66] *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

[67] *See Zurich Am. Ins. Co.*, 2009 WL 10671921, at *4–5 (maintaining jurisdiction over two insurers' request for a declaration that there is no coverage under professional liability insurance policies for claims made against a defendant in a different action); *Md. Cas. Co.*, 312 U.S. at 273 (finding an actual controversy exists when a third party seeks judgment against an insured and the insurer seeks declaratory relief regarding coverage for that prospective judgment).

[68] *Aetna*, 300 U.S. at 240–41.

[69] 28 U.S.C. § 1333(1) (admiralty and maritime jurisdiction); 28 U.S.C. § 1332(a) (diversity jurisdiction); *see also Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 347 (1977) ("In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.").

### b.  The Lyons' claim

For the Lyons to prevail on their cross-claim, which sounds in Alaska contract law as a breach-of-contract claim, they must establish the existence of an agreement requiring Defendant to pay them for the vessel, a breach of that agreement, and damages resulting from the breach.[70]

The Lyons established the underlying facts in their cross-claim, which the Court deems to be true, and in their memorandum and declarations supporting their motion for default judgment. Specifically, the Lyons allege that the company they own sold the JULIA BREEZE to Defendant; Defendant entered into a promissory note pursuant to which he would make payments, with interest, over time for the vessel; Defendant secured the promissory note through a ship mortgage agreement pursuant to which he agreed to insure the vessel; Defendant breached the ship mortgage agreement by nullifying the Insurance Policy's coverage when he violated the policy's lay-up warranty; and upon Defendant's breach, the remaining amounts owing under the promissory note became due.[71]

The Lyons provided supporting documentation in the form of executed, notarized copies of the promissory note and ship mortgage agreement.[72] These documents bear out why Defendant's actions resulted in a breach of the ship mortgage agreement and

---

[70] *See Great W. Sav. Bank v. George W. Easley Co.*, 778 P.2d 569, 577–78 (Alaska 1989) (finding a complaint for breach of contract sufficiently stated a claim for which relief could be granted because it alleged that a contractual obligation existed, the defendant breached the contract, and the plaintiff suffered damages).

[71] Docket 6 at 3–4. The Court notes that the Lyons claimed Defendant "failed to insure the Vessel as required by the mortgage." *Id.* at 3, ¶ 24. More precisely, the facts indicate not that Defendant failed to insure the vessel, but instead that his actions violated the ship mortgage agreement because they caused his insurance coverage to "be suspended, impaired, or defeated." Docket 6-2 at 5.

[72] Docket 6-1; Docket 6-2.

acceleration of all outstanding payments. Put simply, the ship mortgage agreement considers a "default" to include Defendant's "failure to perform any covenant, provision or agreement stated or incorporated herein other than payments, and such failure shall continue for ten (10) days after written notice thereof to Owner from Mortgagee . . . ."[73] The covenant Defendant violated is found in Article II, Section 9 of the ship mortgage agreement:

> 9. **Operation of Vessel**. Owner shall not do any act or voluntarily suffer or permit any act to be done, whereby any insurance shall or may be suspended, impaired, or defeated and shall not suffer nor permit the vessel to engage in any voyage not permitted under the policies of insurance in effect, without first covering the vessel to the amount herein provided for, with insurance satisfactory to the Mortgagee for such voyage . . . .[74]

Upon default, the ship mortgage agreement allows the mortgagee to "[d]eclare the unpaid balance of the principal of the indebtedness hereunder and all accrued interest thereon, to be due and payable forthwith, and thereupon it shall become immediately due and payable, and Mortgagee may immediately proceed to foreclose this mortgage . . . ."[75]

The facts demonstrate that Defendant breached the ship mortgage by violating the Insurance Policy's lay-up warranty and voiding his insurance coverage. The Court has determined that Defendant breached the lay-up warranty and nullified his insurance coverage. Once he "suspended, impaired or defeated" the insurance coverage,

---

[73] Docket 6-2 at 6.
[74] *Id.* at 5.
[75] *Id.* at 6–7.

Defendant breached the ship mortgage agreement.[76]  Although there is no indication in the record before the Court that the Lyons provided written notice to Defendant of his default outside of this litigation, Defendant was on notice of his default dating back to his receipt of the Lyons' cross-claim.[77]  He since has failed to respond, nor could he have cured the breach from a practical standpoint given the vessel's sinking.  The Lyons also provided an accounting of Defendant's payments on the promissory note and the outstanding balance, as well as the attorney's fees and costs incurred in this litigation.[78]  The Lyons, therefore, have established a meritorious claim for relief.

This factor weighs in favor of entering default judgment.

### 3. The sufficiency of the complaint and cross-claim

Taken together with the merits of their substantive claims, Plaintiffs' complaint and cross-claim must "state a claim on which [they] may recover."[79]  This *Eitel* factor favors entry of default judgment when the pleadings are "detailed and clearly lay[] out the claims being litigated."[80]  As discussed above, both Aspen's complaint and the Lyons' cross-claim offer detailed explanations that clearly lay out the claims being litigated and establish their right to relief.

This factor weighs in favor of entering default judgment.

---

[76] Docket 6-2 at 5.
[77] Docket 9.
[78] Docket 20 at 2, ¶ 6; Docket 21.
[79] *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal. 2002) (internal citations and quotations omitted).
[80] *United States v. Davis*, No. 1:10-CV-00009-JWS, 2011 WL 3439436, at *2 (D. Alaska Aug. 8, 2011).

### 4. The sum of money at stake in the action

This factor requires an assessment of the money at stake in the litigation as compared to the gravity of the defendant's conduct.[81]  The Court considers Defendant's conduct, although almost assuredly unintentional, to be fairly egregious given that it resulted in the complete loss of a vessel following breach of an unambiguous warranty in his Insurance Policy.  However, when a party seeks declaratory relief, the factor may be considered neutral, that is, neither favoring nor disfavoring entry of default judgment.[82]

As for the Lyons' claim, this factor weighs heavily in favor of entering default judgment given Defendant's breach of the ship mortgage and the complete loss of the vessel.  This is commensurate with a monetary judgment requiring Defendant to pay in full the amounts due on the promissory note, which no longer is secured by any tangible property.  Furthermore, since the Lyons accounted for Defendant's prior payments on the note, a judgment only for the remaining principal and interest provided by the promissory note is equitable.[83]

This factor is neutral with respect to Aspen's request for default judgment and weighs in favor of granting the Lyons' request.

---

[81] *PepsiCo*, 238 F. Supp. 2d at 1176.
[82] *Colony Ins. Co. v. Schmid*, No. EDCV 20-77 JGB (SPX), 2020 WL 6528420, at *4 (C.D. Cal. Sept. 9, 2020).
[83] *Davis*, 2011 WL 3439436, at *2 (finding the fourth *Eitel* factor consistent with entry of default judgment in a case where the United States requested a "substantial" sum that nonetheless was "limited to taxes owed with statutorily authorized additions arising from [the defendant's] failure to pay.").

## 5. The possibility of a dispute concerning material facts

With one exception, there appears to be little room for dispute concerning this case's material facts. The Court accepts the allegations in the complaint and cross-claim as true, and the supporting documentation Plaintiffs provided corroborates their claims. The Court finds particularly persuasive the U.S. Coast Guard report documenting the vessel's sinking and Defendant's written witness statement.[84] The U.S. Coast Guard report was produced by an objective non-party, while the witness statement purportedly represents Defendant's own acknowledgement of the vessel's sinking during the lay-up period. In addition, Defendant neither has appeared nor asserted any defenses, so "it is unlikely that disputes as to material facts will arise."[85] Accordingly, this factor weighs in favor of entering default judgment.

Notwithstanding the above, one factual issue precludes granting Aspen's requested default judgment at this time. The copy of the Insurance Policy Aspen provided with its complaint and motion for default judgment is lacking. This document does not contain key indicia of authenticity, such as signatures from Defendant, the insurance agent, or Aspen.[86] In other words, it does not appear that the document provided to the Court represents an executed, true, and complete copy of the Insurance Policy. Although the Court recognizes that Aspen has alleged facts sufficient to plead a meritorious claim for declaratory relief, the Court will refrain from issuing Aspen's requested declaration unless

---

[84] Docket 17-3 (U.S. Coast Guard report); Docket 17-4 (U.S. Coast Guard press release); Docket 17-5 (U.S. Coast Guard witness statement attributed to Defendant).
[85] *Colony Ins. Co.*, 2020 WL 6528420, at *4.
[86] *See generally* Docket 1-1.

it submits an executed copy of the Insurance Policy that the Court deems adequate.[87]  To be deemed adequate, the copy of the Insurance Policy provided must bear Defendant and the issuing insurance agent's signature.  The Court also expects Aspen or the issuing agent to provide an affidavit certifying that the copy of the Insurance Policy provided is the authentic, true, and correct copy of the Insurance Policy and contains all provisions, terms, conditions, and warranties incorporated into Defendant's policy.

### 6.     Whether the default was due to excusable neglect

This factor favors entry of default judgment when the defendant has been properly served and the plaintiff demonstrates that the defendant is aware of the action but still fails to respond.[88]  Although the concept of excusable neglect may vary based on the circumstances of a particular case, "inadvertence, ignorance of the rules, or mistakes construing the rules do not usually constitute excusable neglect."[89]  Defendant was on notice of the claims brought against him and even discussed the matter directly with Aspen's counsel.[90]  Plaintiffs properly served their complaint and cross-claim against

---

[87]  *See* Fed. R. Civ. P. 55(b)(2) (authorizing the court to "conduct hearings or make referrals . . . to . . . establish the truth of any allegation by evidence . . ."); D. Alaska Loc. Civ. R. 55.1(b)(2) ("Motions for judgment following entry of default must be supported by declarations and evidence establishing the right to relief, including but not limited to: . . . (b) relevant contract documents . . ."); *Love v. Kim*, No. EDCV181338FMOPLAX, 2018 WL 6252429, at *2 (C.D. Cal. Aug. 20, 2018) ("The court also has a duty to thoroughly review all default judgment applications to ensure that the evidence upon which a plaintiff relies is sufficient.") (citing *Eitel*, 782 F.2d at 1472); *Quinn v. Levan*, No. 2:11-CV-3106-MCE-CMK, 2013 WL 2244629, at *1 (E.D. Cal. May 21, 2013) (citations omitted) (recalling the court's prior decision not to enter default judgment based on "insufficient evidence").

[88]  *Wecosign, Inc. v. IFG Holdings, Inc.*, 845 F. Supp. 2d 1072, 1082 (C.D. Cal. Jan. 23, 2012) (citation omitted).

[89]  *Kanaway Seafoods, Inc. v. Grubbs*, No. 321-CV-00269-TMB-KFR, 2022 WL 3082896, at *1 (D. Alaska June 7, 2022) (citation and quotations omitted).

[90]  Docket 8; Docket 4-1 at 2, ¶¶ 3–4.

Defendant.[91]  Yet Defendant failed to enter an appearance in this case.  Based on the facts presented to the Court, there is no apparent basis for which Defendant could claim in good faith that his neglect is excusable.

This factor weighs in favor of entering default judgment.

### 7. The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits

This factor generally disfavors entry of default judgment because courts look to resolve cases on their merits "whenever reasonably possible."[92]  However, this factor disfavors entry of default judgment to a lesser degree in cases where a decision on the merits is impractical or impossible due to the defendant's failure to participate.[93] Defendant has failed to participate in this case, rendering these default proceedings the only practical avenue for Plaintiffs to seek relief.  To the extent this factor weighs against entering default judgment, it does so only slightly, if at all.[94]

On balance, the *Eitel* factors favor entry of default judgment, subject to Aspen's submission of an authentic, true, and correct copy of the Insurance Policy.

### C. Requested Relief

Having determined that the *Eitel* factors favor entry of default judgment, the Court considers Plaintiffs' requested relief.  Although the Court takes Plaintiffs' factual

---

[91] Docket 8; Docket 9.

[92] *Alaska Carpenters Health & Welfare Tr. Fund v. Hickel Constr. & Eng'g, Inc.*, No. 3:20-CV-00047-JMK, 2021 WL 6774908, at *3 (D. Alaska Mar. 23, 2021) (quoting *PepsiCo*, 238 F. Supp. 2d at 1172).

[93] *See* id.

[94] *Cf. Colony Ins. Co.*, 2020 WL 6528420, at *4 (finding that the defendant's failure to appear pushes the seventh *Eitel* factor in favor of default judgment despite courts' general preference for deciding actions on the merits).

allegations as true, the Court need not take allegations regarding damages as true and may consider whether the requested relief is reasonable under the circumstances.

### 1. Aspen's request for declaratory judgment

Aspen requests two declarations from the Court, as follows:

> (1) Defendant Morrow's breach of an express warranty in a policy of marine insurance nulls the policy and releases the underwriters from liability for losses that occur during the period of the violation of the warranty; (2) there is no coverage under the Marine Insurance Policy (SMI-ASPEN Alaska Fleet), Policy Number SMI41806-208 whether for Hull or Protection & Indemnity claims, or any ensuing lawsuit related to such claim or claims; . . . .[95]

Because the Court found that Defendant breached the Insurance Policy and that Aspen's request for declaratory judgment satisfies the Declaratory Judgment Act, the Court is inclined to enter declaratory judgment upon receipt of a satisfactory copy of the Insurance Policy. In doing so, however, the Court is inclined to find that the first declaration quoted above is appropriate but that the second exceeds the law and the materials presented to the Court.

Issuing the second declaration would require the Court to find that *any* breach of the Insurance Policy's lay-up warranty necessarily nullifies and voids the entire policy. In other words, because Defendant breached the lay-up warranty, the second declaration would find that the entire policy is null, even for claims that may have arisen before Defendant breached the policy or that were unrelated to the breach. In some circumstances, courts have strictly construed breaches of warranties in maritime insurance contracts to

---

[95] Docket 16 at 1–2.

void coverage for losses unrelated to the breach.[96] But as discussed in Section B.2.a., *supra*, this Circuit has not embraced fully a federal rule requiring the strict enforcement of lay-up warranties. The Insurance Policy also does not unambiguously state that a breach of *any* warranty nullifies *all* of the policy's coverage, so applying Alaska law would not necessarily result in a different outcome.[97] Accordingly, the Court need not issue such a sweeping declaration, and so if the Court becomes satisfied with that there is no risk of a material dispute concerning the facts of this case, it would be inclined to limit its declaration to Aspen's first proposal.[98]

Aspen's complaint also requests an award of costs, but Aspen's motion for default judgment and proposed order do not reiterate this request.[99] Because the Court is not granting Aspen's motion at this time, it will not award Aspen costs. To the extent the Court later grants judgment in favor of Aspen, Aspen would be free to file a bill of costs with the Clerk of Court following entry of judgment in accordance with D. Alaska Loc. Civ. R. 54.1.

---

[96] *See, e.g.*, *Yu v. Albany Ins. Co.*, 281 F.3d 803, 810 (9th Cir. 2002) (citations omitted) (finding that both federal and Hawaii law would result in a finding that an assured's violation of a captain warranty "suspends coverage whether or not the violation has been shown to have caused the loss.").

[97] *See Kalenka v. Infinity Ins. Cos.*, 262 P.3d 602, 607 (Alaska 2011) ("[W]here a clause in an insurance policy is ambiguous in the sense that it is reasonably susceptible to more than one interpretation, we accept the interpretation that most favors the insured."); *Ness v. Nat'l Indem. Co.*, 247 F. Supp. 944, 947 (D. Alaska 1965) ("It is a well-settled rule of construction that where ambiguity or uncertainty exists in an insurance contract, such ambiguity or uncertainty will be resolved adversely to the insurer.").

[98] It may be the case that no other coverage exists under the policy from a practical standpoint because the vessel is now lost, but this recognition alone does not compel the Court to issue a declaration that exceeds what the law requires. Additionally, this declaration likely is moot for at least two reasons. First, it is partially duplicative of the first requested declaration, at least insofar as the parties to this litigation are concerned. Second, it seems virtually impossible that Defendant or any other party would be able to bring any successful claims unrelated to the sinking at this point given that the vessel is completely lost, the policy has expired, and a significant amount of time has passed since the policy was effective and coverage was potentially available to Defendant and the Lyons.

[99] Docket 1 at 5.

### 2.    The Lyons' request for unpaid principal, interest, attorney's fees, and costs

The Lyons provided an affidavit identifying the payments Defendant made on the promissory note and interest accumulating over time.[100]  The affidavit recounts that, as of the filing of the motion for default judgment on October 14, 2022, Defendant had paid $27,593.12 on the note.[101]  The Lyons assert that $7,964.94 in interest accumulated from July 31, 2021, to October 14, 2022, at the seven percent annual interest rate established by the promissory note, leaving Defendant with an outstanding balance of $98,797.22 as of October 14, 2022.[102]  The Lyons also assert that daily interest continues to accrue on the unpaid sums at $17.42 per day.[103]  Having provided legal invoices and a declaration from their counsel, the Lyons further request $5,734.28 in attorney's fees and costs.[104]

Because they presented a meritorious claim for breach of the ship mortgage agreement and default under the promissory note, and documentation adequate to support their requested damages, the Court finds that the Lyons are entitled to the outstanding principal and interest identified above.[105]  These damages are expressly provided for, and readily calculated, by the promissory note and the Lyons' accounting of the outstanding

---

[100]  Docket 20 at 2–3, ¶ 6.
[101]  *Id.*
[102]  *Id.*
[103]  *Id.*
[104]  *Id.*; Docket 21.
[105]  *See NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 617 (9th Cir. 2016) (upholding a district court's damage award in a default judgment action based on a litigant's affidavit and submission of supporting data).

balance.  They also adequately compensate the Lyons, who requested no more than what Defendant properly owes them pursuant to the parties' contract.

With respect to attorney's fees, the promissory note provides for "all expenses incurred in collection, including reasonable attorney's fees," upon default.[106] Both Alaska law and federal maritime law generally allow parties to contract for an allocation of attorney's fees and legal costs.[107]  Thus, the Court will apply the promissory note's terms and grant the reasonable attorney's fees the Lyons requested.  Similarly, the Court will award the Lyons their costs incurred in connection with their efforts to collect Defendant's outstanding debt through this litigation.

## IV.    CONCLUSION

In light of the above, the Court **GRANTS** the Lyons' Motion for Default Judgment at Docket 18.  The Court's default judgment against Defendant will follow.  At this time, the Court **DENIES** Aspen's Motion for Default Judgment at Docket 16, but does so without prejudice such that Aspen may renew its motion once the Court has received and reviewed an authentic, true, and correct copy of the executed Insurance Policy.  As discussed in Section B.5., *supra*, the Court is inclined to enter default judgment in favor of Aspen upon receipt of an executed copy of the Insurance Policy that bears Defendant and the issuing agent's signature, along with an affidavit from Aspen or the issuing agent

---

[106] Docket 6-1 at 2.

[107] *See O'Connell v. Will*, 263 P.3d 41, 47 (Alaska 2011) ("When parties include a provision for attorney's fees in their contract, they draft that provision in the shadow of [Alaska's Civil] Rule 82, and it is logical to infer that the intent behind a contractual attorney's fees clause is therefore to provide for attorney's fees that are not otherwise provided by Rule 82."); *M/V Am. Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492–93 (9th Cir. 1983) (recognizing that an award of attorney's fees is permissible in a maritime case involving a contract containing an express provision for such an award).

certifying that the copy of the Insurance Policy provided is an authentic, true, and correct copy. To the extent the Insurance Policy incorporates all or part of the policy materials issued to former owners of the JULIA BREEZE, the Court expects to receive *all* such documents with a clear indication of the provisions applicable to Defendant. Upon receipt of this submission, the Court expressly reserves its authority to reconsider whether entry of default judgment in favor of Aspen is appropriate.

IT IS SO ORDERED this 30th day of November, 2022, at Anchorage, Alaska.

*/s/ Joshua M. Kindred*
JOSHUA M. KINDRED
United States District Judge